# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

September 30, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**DAVID RIGGS,**
**Claimant Below, Petitioner**

**vs.)  No. 15-1023** (BOR Appeal No. 2050368)
(Claim No. 2014000529)

**APOGEE COAL COMPANY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner David Riggs, by Reginald D. Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Apogee Coal Company, by Henry C. Bowen, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated September 30, 2015, in which the Board affirmed an April 10, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's June 5, 2014, decision to deny the request to add disc displacement of lumbar intervertebral disc without myelopathy as a compensable component of the claim. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Riggs, a heavy equipment operator for Apogee Coal Company, injured his head, neck, and lower back on June 27, 2013. Mr. Riggs filed for workers' compensation benefits and the physician's portion of his application was completed by John Morgan, M.D., of Logan Regional Medical Center. Dr. Morgan diagnosed Mr. Riggs with a closed head injury and a lumbar strain. A CT scan of the lumbar spine revealed degenerative changes with no evidence of acute abnormality. CT scans of Mr. Riggs's head, cervical spine, thoracic spine, and pelvis

1

revealed no evidence of an acute abnormality. Jodi Cisco, M.D., also evaluated Mr. Riggs while he was at the hospital. Mr. Riggs reported a severe headache, neck and low back pain, and tingling in the bottom of his feet after falling off some equipment at work. Dr. Cisco's impression was a fall with a closed injury and possible cervical and lumbar strains. A follow-up CT scan of the head revealed no acute process. After twenty-four hours of observation with no neurological changes, Mr. Riggs was discharged. On July 10, 2013, the claims administrator ruled the claim compensable for a closed head injury and lumbar sprain.

An MRI of Mr. Riggs's cervical spine revealed disc bulging and stenosis throughout the cervical spine from C2-3 through C6-7 on August 27, 2013. An MRI of the lumbar spine revealed degenerative spondylosis, a small disc protrusion at L2-3, a disc bulge with central disc protrusion resulting in a moderate degree of canal and foraminal stenosis at L3-4, a disc protrusion with diffuse disc bulge resulting in canal and foraminal stenosis at L4-5, and a broad-based disc protrusion resulting in foraminal stenosis at L5-S1. On September 23, 2013, Mr. Riggs was seen by Dr. Cisco for a follow-up. Dr. Cisco recommended a referral to Panos Ignatiadis, M.D., for a neurosurgical consultation.

In early October of 2013 Mr. Riggs was evaluated by Robert A. Marsh, M.D., a neurosurgeon. Dr. Marsh opined that Mr. Riggs's lumbar problems were related to lumbar degeneration that had occurred over a lifetime of abuse on his body and not any acute injury. An x-ray revealed no evidence of an acute abnormality. Saghir Mir, M.D., performed an independent medical evaluation on October 9, 2013, and concluded that Mr. Riggs had sustained a work related injury to his neck and lumbar spine, which was superimposed on significant pre-existing degenerative changes in the neck and lower back. Dr. Mir concluded that Mr. Riggs had not reached maximum medical improvement. He recommended additional physical therapy and continued periodic follow-ups with a neurologist. In a November 21, 2013, addendum Dr. Mir opined that Mr. Riggs had reached maximum medical improvement on October 31, 2013.

Dr. Ignatiadis performed a neurosurgical evaluation on November 8, 2013, and diagnosed cervical and lumbar stenosis. He attributed Mr. Riggs's symptoms to the work-related accident. He supported his conclusion by noting that Mr. Riggs had been able to perform his job without any restrictions and was without complaints prior to that injury. He also noted that Mr. Riggs had some evidence of shoulder pathology, which should be assessed by an orthopedist. Dr. Ignatiadis saw no need for surgical intervention, but recommended continued physical therapy for his neck. Following the orthopedic consultation and additional treatment, Dr. Ignatiadis recommended that Mr. Riggs undergo a functional capacity evaluation. The claims administrator closed the claim for temporary total disability benefits on December 23, 2013.

On February 10, 2014, Dr. Cisco requested that lumbago, cervical strain, and bulging disc be added as compensable diagnoses in the claim.[1] Dr. Mir performed another independent medical evaluation on February 12, 2014. He opined that Mr. Riggs was at maximum medical improvement and suffered from 5% whole person impairment. The claims administrator on March 26, 2014, added cervical sprain and posttraumatic stress syndrome as compensable

---

[1] These diagnoses are not at issue in this appeal.

2

diagnoses. Then on June 5, 2014, the claim administrator denied Dr. Cisco's request to add disc displacement of an intervertebral disc without myelopathy as a compensable diagnosis in the claim.

Robert Walker, M.D., performed an independent medical evaluation on October 10, 2014. He opined that the diagnosis of lumbar disc displacement was directly related to the work-related injury. He opined that Mr. Riggs was at maximum medical improvement and suffered from 13% whole person impairment related to the lumbar spine. On January 7, 2015, Dr. Mir performed a record review. Dr. Mir noted that Mr. Riggs's diagnostic imaging studies revealed pre-existing lumbar degenerative changes that pre-existed the compensable injury. Dr. Mir also noted that bulging discs are a very common finding secondary to degenerative changes, which may or may not be symptomatic. In that regard, Dr. Mir opined that the diagnosis of displacement of lumbar intervertebral disc was not causally related to the compensable injury. Rather he opined that it was related to degenerative changes.

The Office of Judges determined that Mr. Riggs did not show that he suffered lumbar disc displacement without myelopathy in the course of and as a result of his employment. The Office of Judges found that the MRI evidence of bulging discs at L3 through S1 was caused by degenerative changes and not the compensable injury. The Office of Judges found the opinion of Dr. Marsh, a neurologist, to be persuasive. He opined that Mr. Riggs's lumbar issues were related to lumbar degeneration that had occurred over a lifetime. The Office of Judges concluded that Dr. Ignatiadis interpreted Mr. Riggs's lumbar MRI as showing mild stenosis at L4-5 and L5-S1 that predated the compensable injury. The Office of Judges rejected Dr. Ignatiadis's conclusion that Mr. Riggs's lumbar symptoms were related to the compensable injury. The Office of Judges noted that Dr. Ignatiadis did not explain why he believed the compensable injury caused the symptoms. The Office of Judges also found that Dr. Ignatiadis's neurological examination of Mr. Riggs revealed no objective clinical evidence of a true radiculopathy. Finally, Dr. Mir performed an independent medical evaluation of Mr. Riggs and concluded that Mr. Riggs's multi-level lumbar disc bulging was related to pre-existing degenerative changes as opposed to the compensable injury. The Office of Judges noted that the only medical evidence supporting the addition of lumbar displacement was the reports of Dr. Cisco and Dr. Walker. The Office of Judges noted that Dr. Cisco did not demonstrate any causal connection between the diagnosis and the compensable injury. Furthermore, Dr. Cisco did not address the opinions of the other doctors of record that the bulging lumbar discs were related to pre-existing disc degeneration. The Office of Judges discounted Dr. Walker's opinion because he found radiculopathy when there was no other credible evidence of the condition existing. The Office of Judges also noted that Dr. Walker was is not a neurosurgeon whereas both Dr. Marsh and Dr. Ignatiadis are. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

After review, we agree with the consistent decisions of the Office of Judges and Board of Review. The Office of Judges found that the evidence of record supported the opinion that the work injury did not cause the disc bulges. A CT scan done directly after the injury showed degenerative changes and several physicians of record opined that the disc bulges were degenerative in nature. Because the diagnostic scans and physicians' opinions support their

3

conclusions, it was not clearly wrong for the Office of Judges and Board of Review to adopt this opinion.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: September 30, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISSENTING:**
Justice Margaret L. Workman